FRANCISCO VICENTY, Plaintiff and Appellee, *v.* CORONA
BREWING CORPORATION, Defendant and Appellant.

No. 10269. Argued November 5, 1951.—Decided February 14, 1952.

*R. Rodríguez Lebrón* for appellant. *Joaquín Gallart Mendía*
counsel for the Department of Labor, for appellee.

MR. CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

Francisco Vicenty claimed from the Corona Brewing Corporation the amount of $1,231.09 for unpaid wages for ninth hours worked from November 7, 1935, on which date Act No. 49 approved August 7, 1935, went into effect, until March 12, 1944, the effective date of Mandatory Decree No. 5 of the Minimum Wage Board, regulating the beer and soda water industry. He alleged in his complaint that during that time he worked 12 hours a day for 2,863 days, on the basis of an average monthly wage of $154.33, that is, $5.14 a day, and having worked 12 hours a day his salary per hour was forty-three cents ($.43) ; that not having paid him for the ninth hours at double rate as provided by Act No. 49 of 1935, but at single rate, the respondent owed him the above-mentioned sum.

In its answer the respondent accepted some of the facts and denied others, and as special defenses it alleged that the petitioner was exempt from the provisions of Act No. 49 of 1935, because he was an employer in the sense that term is used in said Act and that petitioner's cause of action had prescribed. The respondent also filed a counterclaim against the petitioner in the amount of $81,738.57 for alleged damages it had suffered due to the negligence, incompetency and carelessness of the petitioner in the performance of his duties as brew master.

The case was heard and the lower court overruled respondent's counterclaim and granted the complaint, ordering the respondent to pay to the petitioner the amount of $965.55 as unpaid wages corresponding to 2,355 ninth hours. Feeling aggrieved, respondent appealed and now contends that the court a quo erred: (1) in deciding that the petitioner was covered by Act No. 49 of 1935; (2) in excluding evidence of new arrangements between appellant and appellee or substantial changes made in appellee's conditions of employment after 1944 in order to calculate the prescriptive term, and

(3) in deciding that the petitioner worked an average of 12 hours a day and in granting him the amount of $965.55 as compensation.

 In discussing the first assignment of error appellant contends that the petitioner, according to the evidence, qualifies as a representative of the employer and thus is not entitled to the benefits of Act No. 49 of 1935. He then tries to distinguish the instant case from *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250. He is not right. In the *Chabrán* case we held that under the provision of § 4 of Act No. 49 of 1935, to the effect that *"employer* includes every natural or artificial person and the manager, superintendent, foreman, majordomo, or representative of said natural or artificial person,"* the Legislature did not exempt representatives of the employer, as employees, from the provisions of said Act. We also held therein that the word "employer" was defined in § 4 to include the representatives of the employer to make it more difficult for employers to evade the Act, but that such representative, so far as his own interests are concerned, is an employee vis-a-vis the owner of the establishment who is the true employer. We finally said, as regards this question, that "It is obvious that in the context of § 4 a representative is not an employee who performs routine manual or clerical labor. Rather he is someone who acts and speaks for the employer on matters requiring the exercise of judgment. For example an employee who has other employees working under him whom he has the power to hire and fire would probably fall in this category." To the same effect see *Tulier* v. *Land Authority*, 70 P.R.R. 249 and *Correa* v. *Mario Mercado e Hijos*, 72 P.R.R. 77.

██ The evidence in the instant case showed that the petitioner worked as an assistant to respondent's brew master during the period comprised in his claim, namely, from November 7, 1935, until March 12, 1944. His work consisted: (a) in taking care, under the brew master's orders, of the brewing of the beer from beginning to end, and in order

to do this he had to go to different dependencies of the brewery to take samples of the product; (*b*) in constantly watching and inspecting the tanks and their pressure, in order to do which he had workmen to help him; (*c*) sometimes he assumed the work and responsibilities of the brew master but always under the latter's supervision. In his employment, appellee did not have to start working at a given time, and as assistant brew master he could not hire or fire employees nor fix their wages or shifts, such powers pertaining to appellant's management. It was further proved that although in 1940 appellant sent appellee to study to the Brewing Academy in New York where he graduated as a brewer, upon his return he remained as assistant brew master with the same duties he had before.

In our judgment the court *a quo* did not err in deciding that Act No. 49 of 1935 applied to appellee. His work as assistant brew master did not divest him of his status as employee upon becoming a representative of the employer. The doctrine established in *Chabrán v. Bull Insular Line* and *Tulier v. Land Authority, supra,* is in point here.

██ It is averred in the second assignment of error that the court *a quo* erred in not permitting appellant to present evidence of new arrangements between appellee and appellant or of substantial changes made in appellee's employment conditions after 1944 in order to calculate the prescriptive term of the action.

As previously set forth, appellee limited his claim to the period between November 7, 1935, and March 12, 1944. He left his employment on March 12, 1948, and filed his complaint on October 4, 1948. Invoking subdivision 3 of § 1867 of the Civil Code, 1930 ed.,[1] the respondent, among its special defenses, alleged that petitioner's cause of action was barred

---

[1] Subdivision 3 and the last paragraph of § 1867 provides:

"Section 1867.—Actions for the fulfilment of the following obligations shall prescribe in three years:

" . . . . . . .

"3. For the payment of mechanics, servants, and laborers the amounts

as to work done prior to, among others, the year 1945, because of modifications in his compensation.

The incident giving rise to this assignment originated while witness Antonio Escudero, respondent's manager, testified in this manner:

"Q. Do you remember what those additional functions were, if you remember that?

"A. Well, he was really the head of the department insofar as the assignment of work to the personnel, the assignment of turns, the more or less immediate supervision as to materials, etc., was concerned . . . we always called on Mr. Vicenty and not on Mr. Groneau to consult and discuss all problems.

"Q. Subsequent to that, did any other change take place?

"A. Yes, then in 1945 . . .

"*Mr. Gallart:* Objection to the witness' stating what change occurred in 1945, because the complaint extends up to 1944.

"*The Court:* It covers 1944.

"*Mr. Rodríguez Lebrón:* The fact that the complaint is limited to 1944 does not deter us from raising any change in the labor conditions, in order to support our plea of prescription, which is predicated on the fact that if any fundamental change occurred in his functions, and in the duties and obligations, and if three years elapsed from that change, then plaintiff's claim in connection with previous years, has prescribed.

"*Mr. Gallart:* I do not see how can my colleague mistake one thing for another. If there were changes in the nature of the work of the principal (*sic*), they must be changes occurring within the time covered by the complaint.

"*The Court:* Objection sustained.

"*Mr. Rodríguez Lebrón:* Exception.

"Q. Until what date did Vicenty work for you?

"A. Until March 12, 1948.

"*Mr. Rodríguez Lebrón:* May it please the court, as a matter for the record, in case the witness is permitted to testify

due for their services, and for the supplies or disbursements they may have incurred with regard to the same.

"4. . . . . . .

"The time for the prescription of actions referred to in the three preceding paragraphs shall be counted from the time the respective services have ceased to be rendered."

in this connection, which we request, which is perfectly admissible, notwithstanding that the claim was limited to the year 1944, the evidence would show that in 1945 another substantial change took place in Mr. Vicenty's duties as well as . . .

*"The Court:* The stenographer shall take that down for the record itself, for the purposes of any subsequent proceeding in a higher appellate court, it being understood that that is what the witness would have testified had his testimony in connection with those questions whose objection was sustained, been permitted.

*"Mr. Rodríguez Lebrón:* As well as in his compensation and, in general, a change as to his conditions and terms of employment."

This assignment must be disposed of taking into consideration Rule 43 (*c*) in connection with Rule 61 of the Rules of Civil Procedure.[2] Our Rule 43 (*c*) is different from its counterpart in the Federal Rules in that upon being adopted here, we suppressed the part referring to actions tried by a jury. In this connection Federal Rule 43 (*c*) provides as follows:

"In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove

---

[2] Rule 43 (*c*) provides:

"Rule 43.—Evidence.

" . . . . . . .

"(*c*) *Record of Excluded Evidence.*—In any action, if an objection to a question propounded ·to a witness is sustained by the court, the examining attorney *may* request and the court shall order that the evidence sought to be elicited by the objected question be taken and reported in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged." (Italics ours.)

And Rule 61 provides:

"Rule 61.—Harmless Error.

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial right of the parties."

by the answer of the witness. The court may require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. In actions tried without a jury *the same procedure may be followed*, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged." (Italics ours.)

As may be seen petitioner's attorney herein rather followed the procedure provided by the Federal Rule in cases tried by a jury, namely, to enter into the record what he expected to prove by witness Escudero. As regards this part of the Federal Rule, it has been decided that the failure to make a formal offer of what the party expected to prove by the witness does not prevent the error committed, upon the question being excluded, from prospering on appeal. *Meaney* v. *United States*, 112 F. 2d 538 (C.C.A. 2, 1940) ; *Maguire* v. *Federal Crop Ins. Corp.*, 181 F. 2d 320 (C. A. 5, 1950) ; 5 Moore's Federal Practice, § 43.11, p. 1351. However, where the significance of excluded evidence is not obvious or where it does not appear what the witness would have testified to, an offer of proof must be made to preserve the question for appeal. *Hoffman* v. *Palmer*, 129 F. 2d 976 (C.C.A. 2, 1942) ; *Sorrels* v. *Alexander*, 142 F. 2d 769 (C.C.A. D.C., 1944) ; 5 Moore, *op. cit.*, *id.*

As to actions tried without a jury, as in Puerto Rico, Moore, in his comments on the Federal Rule, states:

"Here the cast of the rule indicates that generally the lower court shall take all evidence that is clearly not inadmissible or privileged, so that the appellate court, if it disagrees with the lower court's conclusions, may be able to render the proper judgment and not be obliged to remand the case for further trial. If evidence appears of record the appellate court is entitled to consider it, if legitimate, even if the district court had excluded it for the purpose offered." *Op. cit.*, p. 1352. *F. H. McGraw & Co.* v. *Milcor Steel Co.*, 149 F. 2d 301 (C.C.A. 2, 1945).

Now, this Court eliminated the first part of Rule 43 (c) of the Federal Rules when it approved Rule 43 (c) in force here, induced by the fact that the former referred to actions tried by a jury, which is never the case in Puerto Rico in civil actions. That elimination does not preclude the use of the practice recognized by our decisions in connection with the offer of what was intended to be proved by the witness when the court sustains an objection and that if said offer is not made, the ruling of the court may be sustained on that ground. *Romañat* v. *White Star Bus Line, Inc.*, 43 P.R.R. 901, where we held, quoting from syllabus No. 7, that: "Where an objection is made to the testimony of an expert witness, if the party presenting him as a witness fails to make clear by a specific offer what it intends to prove by the said witness, a ruling of the court sustaining the objection may be upheld solely on this ground." We have applied that same rule in criminal cases. *The People* v. *Diodonet*, 22 P.R.R. 698; *People* v. *Gelpí*, 55 P.R.R. 725.

In the present case although the offer made by respondent's attorney of what he expected to prove by witness Escudero is not as ample and detailed as it could have been, this was possibly due to the fact that he was interrupted by the court when beginning to enter it into the record. We wish to advise, for future cases, that in situations like this, counsel must include in the record, as amply as possible, what the witness who has not been allowed to answer would have testified, in order to enable this Court to determine whether the evidence, if believed by the lower court, would have warranted a different decision. Or he may request, complying with Rule 43 (c), *supra*, that the evidence he attempts to elicit by means of the objected question, be taken and reported in full.

In connection with this question of the admission of evidence by courts of first instance, it seems to us advisable to quote Judge Learned Hand's suggestion to federal dis-

trict courts to the effect that: ". . . the disposition to rule out evidence because it offends against some canon of the law of evidence is to be discouraged; admission seldom does any harm, while exclusion often proves extremely embarrassing in sustaining a judgment fundamentally just." *United States* v. *White*, 124 F. 2d 181, 186 (C.C.A. 2, 1941). And see the dissenting opinion of Judge Clark in *Hoffman* v. *Palmer*, *supra*, pp. 998, 1002.

Was the question propounded to witness Escudero inadmissible? Let us see.

Construing the scope of subdivision 3 of § 1867 of the Civil Code, *supra*, we have held that the three-year period provided therein shall be counted from the time the respective services ceased to be rendered, one of the instances in which this is so being, as we said in *Muñoz* v. *District Court*, 63 P.R.R. 227, when "there had been a change in the nature of the services rendered by the workman and . . . a process of renovation was under way which abolished the former contract and gave rise to a new contract . . . so that the time for prescription would be computed from the day each contract expired without taking into account whether the workman remained in the same employment." To the same effect see *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660; *Jiménez* v. *District Court*, 65 P.R.R. 35; *Valiente & Cía.* v. *District Court*, 68 P.R.R. 491; *Chabrán* v. *Bull Insular Line*, *supra*.

The fact that petitioner herein limited his claim to the year 1944 and that he testified that until 1947, when he was appointed brew master in substitution of Mr. Groneau, he always performed the same work and that his contract suffered no change whatsoever (despite the different changes in his compensation) was no reason to prevent respondent, in support of its plea of prescription, from presenting the evidence which, as it announced, would show that there had been substantial changes in petitioner's conditions of employ-

ment. Moreover, if according to the ninth finding of the lower court to the effect that "beginning in 1943 and until March 12, 1944, petitioner received a considerable wage increase, in contemplation of his increased duties as assistant chemist brewer," the respondent was entitled to show, if able, that not only "increased duties" were imposed on appellee during said years, but that in 1945 such a substantial change could have taken place in his duties as to constitute a new contract and, consequently, that the three-year period of prescription began on said date.

The fact that the title of the position held by the petitioner was "assistant brew master" and that as a matter of fact he did not fill the position of brew master until 1947, does not imply, as appellee argues, that substantial changes giving rise to a new contract could not have occurred in his work, compensation, etc.

The second error was committed, it was prejudicial to the respondent and leads to the reversal of the judgment and the remanding of the case for a new trial.